IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | **8:15CR178** |
| vs. | |
| **CUC THI SCHAEFFER,** | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (ECF No. 155), issued by Magistrate Thomas D. Thalken recommending that the Motion for Hearing under *Jackson v. Denno*, 378 U.S. 368 (ECF No. 119), and the Motion to Suppress (ECF No. 121), both filed by Defendant Cuc Thi Schaeffer ("Schaeffer"), be denied. Schaefer filed an Objection to the Findings and Recommendation (ECF No. 159) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government has not responded to the Objections. For the reasons set forth below, the Findings and Recommendation will be adopted, the Objection will be overruled, and the Motion for Hearing and the Motion to Suppress will be denied.

## BACKGROUND

Schaeffer is charged in the Second Superseding Indictment (ECF No. 70) with conspiracy to distribute and/or possess with intent to distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 846. Schaeffer seeks to suppress all evidence obtained in connection with the search of Schaeffer's person, residence, and property, on November 8, 2013. The Magistrate Judge held a hearing on both Motions on June 22, 2016. The Magistrate

Judge took the matters under advisement and issued a written Findings and Recommendation (ECF No. 155) that included the Magistrate Judge's findings of fact. Schaeffer does not expressly object to the Magistrate Judge's findings of fact. The Court adopts the Magistrate Judge's findings of fact for purposes of these Motions. The Court provides the following background by way of summary.

**Evidence Supporting the Warrant**

On October 23, 2013, law enforcement, suspecting criminal activity, learned that two packages were being mailed from Pittsburgh, Pennsylvania, to Fairfield, California. One package was mailed from Defendants Brian Robinson ("B. Robinson") in Pittsburgh and addressed to Kimberly Robinson ("K. Robinson") at a P.O. Box associated with B. Robinson in Fairfield. On October 24, 2013, officers with the Fairfield Police Department arrested B. Robinson and K. Robinson and seized the packages. Law enforcement searched the residence of B. Robinson and K. Robinson and discovered evidence of contacts between the Robinsons and Schaeffer. These contacts included a spreadsheet with line items of capital, including the purchase of a tractor, and an RV (Ex. 2 at 6);[1] an invoice for an RV repair dated April 4, 2013, with the handwritten name "Cuc Schaeffer" (Ex. 2 at 7); a customer invoice and receipts from Home Depot for Schaeffer (Ex. 2 at 8); a copy of an email to SchaefferCuc@yahoo.com from mrichardson@loomistank.com, regarding the purchase of a water tank (Ex. 2 at 8); a power bill statement to 2329 Edison Avenue, Sacramento (Ex. 2 at 8); receipts with "C" written on them, presumed by law enforcement to stand for "Cuc" (Ex. 2 at 8); and

---

[1] References to "Ex." in this Memorandum and Order are to the Exhibit number received at the hearing on June 22, 2016. Pinpoint citations are to the page number within each individual exhibit.

2

receipts to a general store in Cool, California, which is near Pilot Hill, California, where Schaeffer owns land and rents to a tenant (Ex. 2 at 9).

Based on this evidence, law enforcement further investigated Schaeffer and discovered that Schaeffer is the owner of land at 6300 Blarney Way, Pilot Hill, California (Ex. 2 at 10); that Schaeffer's mailing address was 3301 Pope Avenue, Sacramento, California, a property which she co-owns with her husband, Brian Haines ("Haines") (Ex. 2 at 10); and that Schaeffer's Pope Avenue address had a wrought iron gate and a high fence, which law enforcement associated with illicit activities (Ex. 2 at 10).

Law enforcement went to the land at 6300 Blarney Way, Pilot Hill, California, and observed two tent-like structures on the property. One of the structures contained approximately 121 white plastic buckets, with sticks, and the other structure had equipment commonly used to dry marijuana after it is cut from the plant. (Ex. 2 at 11.) In the other structure was a large amount of marijuana trimmings and leaves scattered on the floor. (Ex. 2 at 11.) Law enforcement also observed large water tanks, fed by an electric water pump. (Ex. 2 at 12.) There were approximately 100 holes in the ground on another area of the property. (Ex. 2 at 12.)

Based on this evidence, as described in Officer Patrick High's ("Officer High") affidavit, a magistrate in Solano County, California issued a warrant to search (1) Schaeffer's person, (2) the residence at 3301 Pope Avenue, Sacramento, California, and (3) the residence at 2329 Edison Avenue, Sacramento, California.

**Execution of the Warrant**

Law enforcement executed the warrant on November 8, 2013. Schaeffer arrived at her residence after law enforcement initiated the search. Haines was home when

officers arrived. The officers were armed, and had weapons pointed at Haines when they first entered the residence. However, once the house was cleared, the weapons were holstered.

When Schaeffer arrived several officers were at the house. The officers were wearing casual clothing with vests with the word "police" on them. When Schaeffer arrived, one of the law enforcement officers searched her, took her phone, advised her the law enforcement officers were executing a search warrant, and provided her a copy of the warrant. Schaeffer was told she could wait or leave, and she indicated that she would wait. Schaeffer sat on the retaining wall attached to the driveway while she spoke to Officer High. She was wearing a sweatshirt and pajama pants and there were no other officers nearby when Officer High initially talked to Schaeffer.

Officer High asked Schaeffer if she would be willing to talk to him, and she said she would. Schaeffer and Officer High then had a conversation lasting approximately five to ten minutes. Officer High ended the conversation because he felt Schaeffer was not being honest. Officer High described Schaeffer's demeanor as calm and monotone in her responses. She did not seem to be agitated or upset and there was nothing in her behavior or in the conversation between Schaeffer and Officer High that led Officer High to believe Schaeffer was under the influence of any type of substance. Schaeffer was never hand-cuffed or restrained. Over a year later, on June 1, 2015, Schaeffer was arrested and indicted for conspiracy to distribute marijuana. (*See* ECF No. 1.)

The Magistrate Judge recommended that the Court conclude that the warrant to search Schaeffer's property and person was supported by probable cause, or, even if it was not, that law enforcement acted in good faith when relying on the warrant. Finally,

4

the Magistrate Judge concluded that Schaeffer's statements to law enforcement were voluntary. Schaeffer objects to each of the Magistrate Judge's conclusions

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

### I. Issuance of the Warrant

The Fourth Amendment demands that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause. . . ." U.S. Const., amend. IV. Schaeffer argues that the affidavit supporting the warrant was not supported by probable cause. Further, Schaeffer argues law enforcement could not, in good faith, rely on a defective warrant. The Court addresses each argument in turn.

#### A. Probable Cause

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause" is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In determining whether probable cause exists, a court must look at the totality of the circumstances. *See id.* at 230, 234. This determination is to be "based upon a

common-sense reading of the entire affidavit," *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir.1982)), and any "reasonable inferences" drawn from the affidavit. *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). The assessment of probable cause is made "from the viewpoint of a reasonably prudent police officer acting in the circumstances of the . . . case." *Seidel*, 677 F.3d at 337 (citing *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001)).

"The Supreme Court has recognized that, because of the Constitution's 'strong preference for searches conducted pursuant to a warrant,' an issuing judge's determination of probable cause should be paid great deference by reviewing courts.'" *United States v. Wright*, 145 F.3d 972, 974 (8th Cir. 1998) (quoting *Illinois v. Gates,* 462 U.S. 213, 236 (1983)); *see also United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009) (stating that whether a search warrant is supported by probable cause is determined by the totality of circumstances; resolution of the question by an issuing judge should be paid great deference by reviewing courts). "[T]he probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *Stults*, 575 F.3d at 843; *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006).

In this case, it is undisputed that law enforcement officers monitoring packages of cash sent to the Robinsons' home in Fairfield, California, led to those officers obtaining a search warrant for the Robinsons' home. Items found at the Robinsons' home led the same officers to obtain the subject search warrant for Schaeffer's home. Schaeffer

6

contends whatever was found at the Robinsons' residence demonstrated only minimal or conjectural contacts between Brian Robinson and Schaeffer.

The Court's review of the record demonstrates the affidavit was sufficient for issuance of the warrant. The affidavit demonstrated that Officer High was an experienced narcotics investigator, with specific experience and training in marijuana grow operations. In light of this experience, Officer High noted several items found in the course of his investigation of the Robinsons that reasonably led him to conclude Schaeffer was involved with the Robinsons in a marijuana grow operation. For example, in the course of his investigation of the Robinsons, Officer High reviewed a spreadsheet labeled "Start Up." Expenditures in the spreadsheet showed purchases for land, an RV and a tractor. Schaeffer's name was associated with repairs done to an RV. Officer High also reviewed Home Depot invoices with the name "Cuc Schaeffer" as the purchaser. The receipts listed Schaeffer's phone number and her residence, 3301 Pope Avenue, Sacramento. The receipts were for PVC pipe valued at over $500.00, and for almost $800.00 worth of items such as hoses, shovels and extension cords, which Officer High associated with a greenhouse. Officer High also observed paperwork with Schaeffer's email address which referenced Schaeffer's purchase of a large water tank.

Upon further investigation, law enforcement determined that Schaeffer owned property with a mailing address of 6300 Blarney Way, Pilot Hill, California, which she purchased in March of 2013. Law enforcement traveled to the property and observed large water tanks. The pumps were fed by an electric water pump. Officers saw hoses running away from the pumps and east down a small hill. Officer High stated in his

affidavit that this equipment appeared consistent with the Home Depot receipts found at the Robinsons' home. (Ex. 2 at 12.)

In another area on the property, law enforcement observed about 100 holes in the ground. Officer High stated that he believed that the marijuana plants had been growing in the holes. (Ex. 2 at 12.) Officers also observed two structures on the property, similar to tents. One structure had approximately 120 white plastic buckets in it, all containing sticks. (Ex. 2 at 11.) Officer High opined that, based on his training and experience, these types of planters were commonly used to cultivate marijuana. Officers observed that the other structure contained equipment used to dry marijuana after it is cut from the plant, and officers observed a large amount of marijuana trimmings and leaves scattered on the floor inside that structure. (Ex. 2 at 11.)

While searching the Robinsons' residence, law enforcement also found a power bill for property at 2329 Edison, Avenue, Sacramento, California. Law enforcement believed that the residence was connected to Schaeffer and Haines because Haines was associated with the address and he and Schaeffer owned several properties together. (Ex. 2 at 11.) The bill was for $665.37, dated May 1, 2013. Upon further investigation, law enforcement discovered that the residence was a small, single family home. Officers also located a bill for the residence for March of 2013 in the amount of $157.39. (Ex. 2 at 11.)

Based on this evidence and the evidence in the record, the Court concludes the warrant was supported by probable cause. The evidence found at the Robinsons home and through subsequent investigation reasonably connected Schaeffer to a marijuana grow operation. Schaeffer dismisses these connections, stating that she is required as a

landlord to care for her property, thus, Home Depot receipts would not be uncommon. However, this argument disregards the fact that the Home Depot receipts were found at the Robinsons' property in connection with other evidence linked to a marijuana grow operation. Further, the items reflected in the receipts were directly related to items used to cultivate marijuana. Law enforcement observed items matching the descriptions on the receipts at the property on 6300 Blarney Way, in addition to observing marijuana trimmings and other indicia of marijuana growth on that property. The evidence supporting the affidavit connected Schaeffer, by name, to the Robinsons and to items associated with a marijuana grow operation. Accordingly, under the totality of the circumstances, a reasonable officer would believe that a search of Schaeffer's home and person was supported by probable cause.

### B. *Leon* Good Faith

Even where probable cause is lacking, an exception to the exclusionary rule applies where officers rely on a warrant in good faith. *United States v. Hessman,* 369 F.3d 1016, 1019 (8th Cir. 2004). In *United States v. Leon,* 468 U.S. 897 (1984), the Supreme Court curtailed the use of the exclusionary rule as a remedy for unconstitutional searches, and noted that the stated purpose of the exclusionary rule is "to deter *police* misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916 (emphasis in original). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id. at* 920.

There is no allegation that the issuing judge wholly abandoned a detached and neutral role. Nor is there evidence that Officer High was dishonest or misleading in preparing the affidavit. Schaeffer argues that the affidavit was conclusory and lacked a factual basis for probable case, therefore officers could not act in good faith in relying on the warrant. However, the record shows that Schaeffer's name was specifically associated with other evidence at the Robinsons' property indicating they were involved in a marijuana grow operation. Further, law enforcement did not rely on the evidence at the Robinsons' property alone. Instead, officers further investigated the names and addresses of individuals linked to the operation and discovered additional evidence suggesting that Schaeffer was connected to the Robinsons and their alleged marijuana grow operation. This evidence shows that law enforcement did not act recklessly or dishonestly in preparing the affidavit, and acted in good faith on the search warrant.

## II. Voluntariness of Schaeffer's Statements

Schaeffer argues that her statements to Officer High were not voluntary. Schaeffer's objection states that a *Jackson v. Denno* hearing is required to determine the voluntariness of her statements. The Findings and Recommendation first states that the Motion for Hearing (ECF No. 119) was granted, suggesting that the hearing on the Motion to Suppress was also to serve as a *Jackson v. Denno* hearing. Although the Magistrate Judge appeared to grant the Motion for Hearing, he recommended, presumably for sake of completeness in the record, that the Motion for a *Jackson v. Denno* hearing be denied with respect to suppression of statements. (*See* ECF No. 155, Page ID 1170.) Thus, the Court reviews the matter as a findings and recommendation and not as review of a magistrate judge's order.

To comply with the constitutional rule announced in *Jackson v. Denno*, a judge must "actually and reliably determine[ ]" the voluntariness of a confession before it may be presented to jury. 378 U.S. 368, 380 (1964). The Supreme Court in *Sims v. State of Ga.* analyzed *Jackson* and held that a trial judge's determination as to the voluntariness of a confession must appear from the record with "unmistakable clarity." *Sims v. State of Ga.,* 385 U.S. 538, 544 (1967). Thus, *Jackson* and *Sims* require an unambiguous record of the trial court's voluntariness determination before a confession can be presented to a jury. *Jackson*, 378 U.S. at 380; *Sims*, 385 U.S. at 544; *see also Bracken v. Dormire*, 247 F.3d 699, 701 (8th Cir. 2001). Schaeffer does not argue that the hearing on her Motion to Suppress insufficiently addressed whether her statements to law enforcement were voluntary. At the hearing, the Magistrate Judge received evidence on the voluntariness of Schaeffer's statements, and provided a detailed analysis of the factors as applied to this case. The Magistrate Judge's hearing and his subsequent written analysis comply with the requirements of *Jackson v. Denno*. Thus, to the extent Schaeffer argues that the hearing was insufficient as a matter of due process, her Objection lacks merit.

The thrust of Schaeffer's argument deals not with the sufficiency of the Magistrate Judge's hearing, but with the substance of the Magistrate Judge's reasoning. Specifically, Schaeffer argues that her statements to Officer High were the product of police coercion. "The Fourth Amendment 'is not triggered by a consensual encounter between an officer and a private citizen.'" *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012) (quoting *United States v. Villa–Gonzalez,* 623 F.3d 526, 531 (8th Cir. 2010)). An encounter is consensual unless, "in view of all the circumstances

11

surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Grant*, 696 F.3d 780, 784 (8th Cir. 2012). Courts evaluate several factors when assessing consent under the totality of the circumstances:

> Officers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*Aquino*, 674 F.3d at 923 (quoting *United States v. Griffith,* 533 F.3d 979, 983 (8th Cir. 2008)). "[T]he determination of whether a reasonable officer would believe that [a defendant] consented is a question of fact, subject to review for clear error." *United States v. Quintero-Felix*, 714 F.3d 563, 568 (8th Cir. 2013) (quoting *United States v. Guerrero,* 374 F.3d 584, 588 (8th Cir. 2004)).

"The test for determining the voluntariness of a confession is whether the [government] extracted the confession by threats, violence, or direct or implied promises, such that the 'defendant's will [was] overborne and [her] capacity for self-determination critically impaired.'" *United States v. Williams*, 720 F.3d 674, 691 (8th Cir. 2013) (quoting *United States v. Gannon,* 531 F.3d 657, 661 (8th Cir.2008)). "In applying this test, we must consider the totality of the circumstances, including law-enforcement officials' conduct and the defendant's capacity to resist pressure." *Id.* "The government bears the burden of persuasion and must prove by a preponderance of the evidence the voluntariness of the challenged statements." *Id.* (citing *United States v. Aguilar,* 384 F.3d 520, 523 (8th Cir.2004)).

The Court agrees with the Magistrate Judge's well-reasoned determination that Schaeffer's statements were voluntary and not the product of police coercion. When

Schaeffer arrived at the residence, she was specifically advised that law enforcement was executing a warrant that that she could stay or she could leave the premises. (Hearing Tr., ECF No. 143, Page ID 752.) Officer High repeated this option to Schaeffer at his first interaction with her, specifically telling Schaeffer that she was not under arrest and she was free to leave if she desired. (*Id.* at Page ID 755.) Schaeffer told Officer High that she would wait. (*Id.*) The conversation was cordial and lasted only five to ten minutes. (*Id.* at Page ID 756.)

Although there were several officers at the time the warrant was executed, their weapons were not drawn at any time that Schaeffer was present. Thus, there is no indication that the presence of law enforcement, though significant, was threatening or coercive under the circumstances. Further, during the interaction Schaeffer was neither agitated nor upset (*Id.* at Page ID 758), nor was there any indication that she was under the influence of a controlled substance (*Id.* at Page ID 759). Schaeffer was at her home and had been told more than once that she was not under arrest and was free to leave. *United States v. Czichray*, 378 F.3d 822, 830 (8th Cir. 2004) ("Where a suspect is questioned in the familiar surroundings of his home, and informed several times of his right to terminate the interview at will, we believe that strong evidence of restraint on freedom of movement of the degree associated with a formal arrest is necessary to overcome the natural inference that such questioning is non-custodial."). Accordingly, for these reasons and those stated in the Magistrate Judge's Findings and Recommendation, the Court concludes that Schaeffer's statements to law enforcement were voluntary.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion for *Jackson v. Denno* Hearing and Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 155), are adopted;

2. The Motion for Hearing (Filing No. 119) is denied;

3. The Motion to Suppress (Filing No. 121) is denied; and

4. The Objection to the Findings and Recommendation (Filing No. 159) is overruled.

Dated this 14th day of October, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge